IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

TAMMY ENGLES,                          )
                                       )
           Plaintiff,                  )
                                       )        Case No. 11-CV-491-JED-PJC
v.                                     )
                                       )
HILTI, INC.; HILTI OF AMERICA,         )
INC., ADECCO USA, INC.                 )
                                       )
           Defendants.                 )

## OPINION AND ORDER

The Court has for its consideration the Motion for Summary Judgment (Doc. 26) filed by defendants, Hilti, Inc. and Hilti of America, Inc. (collectively, "Hilti"). Plaintiff, Tammy Engles ("Engles"), filed a response (Doc. 36), and Hilti filed a Reply Brief (Doc. 38).

I.    **Background Facts**

Engles was placed as a temporary employee with Hilti, by an employment staffing agency, Adecco USA, Inc. ("Adecco").[1] Engles asserts claims under the Americans with Disabilities Act ("ADA"), Oklahoma's anti-discrimination law, *Okla. Stat.* tit. 25, §§ 1101 *et seq.*, and *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989), and a claim for intentional infliction of emotional distress based on allegations that her employment was terminated because of a disability or perceived disability. Hilti asserts that Engles was not disabled, that Hilti did not regard her as disabled, and the decision to terminate her employment was discussed and finalized weeks before she had what may have been a very minor stroke that required one or two days off from work. The parties' summary judgment submissions reveal the following undisputed facts.

---

[1]    Plaintiff's claims against Adecco have been dismissed with prejudice, and Adecco is accordingly no longer a party to this action.

Adecco placed Engles on a temporary assignment in the Hilti Marketing Department in 2009. In April, 2010, Hilti no longer needed Engles in the Marketing Department, but the Credit Department was in need of temporary assistance, and Engles began work in the Credit Department in April, 2010. The Credit Department utilized temporary employees supplied through several employment agencies, including Adecco. Engles' supervisor, Laurie Cochrane ("Cochrane"), asserted that, in July (weeks before Engles was terminated), Cochrane determined that Engles was not suitable for regular or permanent employment with Hilti for a number of performance-related reasons and Cochrane decided that Engles should be discharged when a suitable replacement was found.[2] Engles testified that she was never reprimanded or counseled for poor performance.

Engles does not dispute that "*Cochrane made the determination that the previously made decision to let [Engles] go as a temp would be implemented as of Friday, August 20, 2010.*" (Doc. 26 at 5, ¶ 26, emphasis added; Doc. 36 at 8, ¶ 17 ["Plaintiff does not dispute DSUF No. 26"]). Engles herself states that Cochrane's determination "*was made prior to Cochrane learning of [Engles'] stroke.*" (Doc. 36 at 8, ¶ 17, emphasis added). Before the termination could be completed as planned, Engles had occasion to visit a doctor for an eye problem. Hilti approved Engles' request to be off work on August 19 to visit a doctor and approved Engles' request for another day off on August 20. (Doc. 26 at 6, ¶¶ 30-31). Engles indicated that she wanted to return to work on August 20, but that Adecco directed Engles to get a doctor's release

---

[2]     Engles purports to dispute this and many other of Hilti's undisputed facts, based on Engles' conclusory contention that Hilti did not produce "notes, documents or any other record," and as to other facts, Engles similarly asserts that many of Hilti's facts are "not supported by any evidence or documentation." (*See, e.g.,* Doc. 36 at 6-9, ¶¶ 4, 7, 8, 14, 18). Those arguments ignore the fact that Hilti provided supporting affidavits and other testimony, which are sufficient proof under the applicable rules. *See* Fed. R. Civ. P. 56 (permitting reliance upon affidavits and deposition testimony in the summary judgment process).

before returning to work.  Engles left a message for Cochrane stating that she was fine and would be returning to work on August 23, after the noted two (2) days off of work, which had been approved.  On August 23, 2010, Hilti informed Adecco that Engles' temporary assignment at Hilti was at an end.  Engles did not know the results of medical testing until August 23 and, as noted, Engles acknowledges that the decision to terminate her employment was made before Cochrane was aware of the possible stroke diagnosis.  Engles received a doctor's release to work, without any restrictions, on August 23.

Engles agreed that, if she had a stroke, "it was very mild and very minor."  Engles also admits in her summary judgment response that she "was not disabled as defined in the Americans with Disabilities Act."  (Doc. 26 at 8, ¶ 47 [asserting same as part of an undisputed fact] and Doc. 36 at 5, ¶ 1 [admitting no dispute as to same]).  No one at Hilti made any negative comments concerning any impairment or health condition of Engles.  (Doc. 26 at 8, ¶ 46; Doc. 36 at 5, ¶ 1).

## II.     General Standard Applicable to Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  "By its terms, [the Rule 56] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson*, 477 U.S. at 247-48 (emphasis in original).  In considering a summary judgment motion, the courts determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law." *Id.* at 251-52.  The evidence of a non-movant is to be taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor. *Anderson*, 477 U.S. at 255; *see Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012).  The plain language of Fed. R. Civ. P. 56 mandates entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.  *See Celotex*, 477 U.S. at 322.

The summary judgment procedure is "not . . . a disfavored procedural shortcut, but rather [is] an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Id.* at 327.  When the moving party has carried its burden under Rule 56(c), its "opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 259.

## III.   Discussion

### A.      ADA Claims

#### 1.      *Claim for Discriminatory Discharge*

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of

4

employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). ADA discrimination cases are subject to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). The plaintiff bears the initial burden of establishing a *prima facie* case of discrimination under the ADA. To establish a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate (1) that she is "disabled" within the meaning of the ADA, (2) that she is qualified to perform the essential functions of the job, with or without reasonable accommodation, and 3) that she was discriminated against because of her disability. *Hennagir v. Utah Dept. of Corrections*, 587 F.3d 1255, 1261 (10th Cir. 2009); *Butler v. City of Prairie Vill.*, 172 F.3d 736, 748 (10th Cir. 1999).

If the plaintiff meets that burden, then the defendant must offer a legitimate, non-discriminatory reason for the employment action. If the defendant satisfies that burden, the plaintiff then has the burden of demonstrating that the defendant's proffered reason is pretextual. *McDonnell Douglas*, 411 U.S. at 802-03; *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). Assuming the plaintiff met its initial burden to show a *prima facie* case and the defendant offered its legitimate, non-discriminatory reason, the plaintiff then has to show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual – i.e., unworthy of belief." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). "Mere conjecture that the employer's reason is pretext . . . will not defeat a motion for summary judgment." *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997).

To establish a *prima facie* case, Engles must show that she was terminated because of her disability, which "requires [that Engles] present some affirmative evidence that disability was a

determining factor in the employer's decision." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citation omitted).   In other words, "the plaintiff must present evidence that, if the trier of fact finds it credible, and the employer remains silent, [plaintiff] would be entitled to judgment as a matter of law." *Id.* (citation omitted).  While the burden is not onerous, it is also "not empty or perfunctory."  *Id.*, quoting *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 59 (4th Cir. 1995).  To establish the first prong of the *prima facie* case, Engles must demonstrate that she has a disability, which is defined under the ADA as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment.  42 U.S.C. § 12102(1).

Engles asserted in her Petition that Hilti discharged Engles "because of her impairment or perceived impairments."  (Doc. 2-2 at 5, ¶ 26; *see also id.*, ¶ 27).  In the summary judgment briefing, it is not clear which of the categories she alleges render her disabled under the ADA, but it appears that she asserts that she has an impairment that substantially limits a major life activity and has a record of such impairment, because Engles asserts that she "has experienced double vision for years," that the condition was "mild to moderate" over the years, but had "become worse" on August 19, 2010 when she requested time off work to visit the doctor.  (Doc. 36 at 16).  She asserts that it worsened so much on August 19, 2010 that it 'had started to interfere with major life activities," and the doctor directed her to wear an eye patch.  (*Id.*).[3]

---

[3]      Pursuant to the 2008 Amendments to the ADA, the "determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as "(I) medication, medical supplies, equipment, or appliances, low-vision devices (which do not include ordinary eyeglasses or contact lenses), prosthetics [and other assistive items]. . . ." 42 U.S.C. § 12102.

While Engles has provided evidence that she had experienced double vision in the past and that it worsened on August 19, she has not provided *any evidence* that Hilti's decision to terminate her employment was in any way related to, reliant upon, on the basis of, or because of double vision, any stroke, or any impairment resulting from either condition.   To the extent that Engles continues to maintain the "regarded as" disabled claim which she asserted in her EEOC charge and Petition, the record is also devoid of any evidence that Hilti or Engles regarded Engles as disabled at the time she was terminated.[4]

Furthermore, Engles did not dispute that, at the time Hilti decided to terminate her employment, Cochrane did not even know about any diagnosis of a possible stroke. There is also no evidence that Hilti was aware of Engles' double vision, or the fact that she had been prescribed an eye patch, when it made the decision, *weeks before she was terminated*, to discharge her.   Engles also failed to introduce any evidence to dispute that the actual decision to terminate her temporary assignment was made weeks before she was formally terminated on August 23.   Thus, assuming for purposes of this analysis that Engles had an impairment or was regarded as having an impairment that would qualify as a "disability" within the meaning of the ADA, she did not produce any evidence that Hilti's decision to terminate her temporary assignment was due to any such impairment or disability or that Hilti had any discriminatory motive.   Engles has failed to establish her *prima facie* case that she was discriminated against because of any disability.

---

[4]    In the Tenth Circuit, "[a] person is regarded as disabled when '(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.'" *Johnson v. Weld County, Colorado*, 594 F.3d 1202, 1219 (10th Cir. 2010), quoting *Lanman v. Johnson County,* 393 F.3d 1151, 1156 (10th Cir.2004).   There is no evidence in the record that Hilti in any way regarded Engles as disabled.

Even assuming that Engles presented evidence establishing a *prima facie* case of disability discrimination, Hilti provided undisputed evidence that the decision to terminate her temporary position was made before she ever took one day off, before she ever asserted any need to visit the doctor for any problem, and before Cochrane learned that Engles may have had a minor stroke.  Hilti's evidence indicates that: Engles was a temporary employee; she had been reassigned to a very simple job because Cochrane felt Engles was not proficient; Cochrane felt that Engles had problems performing simple tasks, such as taking calls and directing mail; and Engles' coworkers had complained about her poor performance.  Hilti also supplied evidence that temporary assignments were terminated as to at least three (3) other employees who were similarly considered to have had deficient work performance in that time frame.  The Court finds that Hilti's evidence establishes a legitimate and non-discriminatory reason for the discharge of Engles from Hilti's temporary employ.  Moreover, as noted, the record shows that Hilti did not regard Engles as disabled or consider her impaired due to any physical or mental disability.

Engles suggests that Hilti's reasons for the discharge are merely a pretext, because Engles asserts that she was never advised that Hilti was unhappy with her work performance. (Doc. 36 at 19).  She also asserts that the "timing alone" (referring to Adecco advising Engles that Hilti had terminated her temporary assignment after Engles had taken off work for two days) "provides substantial evidence that [Hilti] terminated [Engles] due to her disability."  (Doc. 36 at 20).  However, Engles presented no evidence that her supervisor who terminated the assignment knew of the stroke or double vision, felt it impaired Engles in any major life activity, or that the decision was in any way due to Engles' two days off of work or any impairment that led to those days off.  In fact, Engles did *not dispute* that "Cochrane made the determination that the previously made decision to let [Engles] go as a temp would be implemented as of Friday,

8

August 20, 2010," and Engles herself stated in her response brief that such determination "was made prior to Cochrane learning of [Engles'] stroke."   (Doc. 26 at ¶ 26; Doc. 36 at 8, ¶ 17). [5]

Engles' evidentiary submission simply does not demonstrate that her employment was terminated because of, or in any way related to, a disability or perceived disability.   Her conjecture that she was discriminated against is not enough to refute the significant and convincing record evidence (and Engles' own admissions in the record) that the decision to terminate Engles was made weeks before she ever asked for a day off of work due to any double vision or possible stroke and that such decision was based upon Hilti's dissatisfaction with her work performance.  *See, e.g., Richmond*, 120 F.3d at 209 ("Mere conjecture. . . will not defeat a motion for summary judgment.");  *Woodbury v. Sears, Roebuck & Co.*, 901 F. Supp. 1560 (D. Fla. 1995), citing  *Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir. 1985) (plaintiff's subjective opinion that employer's action was discriminatory, without supporting evidence, is not sufficient to establish pretext so as to avoid summary judgment).

## 2.   *Claim for Failure to Accommodate*

 In her original pleading, Engles claimed that Hilti discharged Engles "because of her impairment or perceived impairments *without considering reasonable accommodations*."  (Doc. 2-2 at ¶ 26, emphasis added).  She appears to have abandoned that assertion, because she does not address it in her summary judgment briefing.  Even assuming she were still maintaining the

---

[5]      The evidence cited by Engles does not reflect that she informed Cochrane of any double vision or possible stroke.  At most, and viewed in the light most favorable to Engels, the testimony cited indicates that she may have informed Adecco that she was having an "eye problem" for which she needed to visit the doctor.  (Doc. 36 at 8, ¶ 17; citing Doc. 36-2 at 151:11-15).  Engles also suggests that Cochrane was informed by Adecco that Engles had a stroke, but the cited testimony merely indicates that Cochrane learned "at some point in time," that Engles thought she may have had a stroke.  (Doc. 36 at 8, ¶ 17, citing Doc. 36-3 at 45:2-23; *see also id.* at 44-45).  Since Engles did not know of the possible "stroke" diagnosis until August 23, 2010 (after the decision had been made to discharge her), Adecco's subsequent discovery of such possible stroke would have no favorable impact upon Engles' case and its deficiencies.

claim as asserted in her Petition, Hilti presented evidence that Engles did not assert any claim for failure to accommodate in her EEOC charge, and Engles did not respond to or present any evidence disputing Hilti's fact statement regarding the absence of any failure to accommodate claim.  The EEOC charge, on its face, does not mention any requested or denied accommodation or any other form of failure to accommodate.  (*See* Doc. 26-4 at 24-25).   In addition, Hilti submitted Engles' deposition testimony and EEOC documents on which Engles reported that she did not notify Hilti of any need for any reasonable accommodation and that she was *not* claiming to have been "Denied Reasonable Accommodation."  (Doc. 26-8 at 3; Doc. 26-4 at 14; Doc. 26-3 at 101).  Engles also testified that she did not need any reasonable accommodation.  (Doc. 26-3 at 101).  Her briefing further states that she "did not request any accommodation from [Hilti]." (Doc. 36 at 19).  There is accordingly no genuine dispute of material fact regarding any failure to accommodate.

The failure to accommodate claim also fails because Engles did not exhaust her administrative remedies as to that claim.  The EEOC charge does not assert any failure to accommodate and the documents and allegations Engles submitted to the EEOC indicated that Engles was *not* asserting any claim for any alleged failure to accommodate.  The failure to accommodate claim should be dismissed for a failure to exhaust her administrative remedies as to that claim.  *See Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1186-87 (10th Cir. 2007) (plaintiff did not exhaust claim for failure to accommodate because the EEOC charge did not include factual allegations of any failure to accommodate that would prompt an investigation of such claim).

### B.      Oklahoma Discrimination Claim

Engles does not assert any different facts, considerations or arguments to support her discrimination claim under Oklahoma law.   Under the Oklahoma anti-discrimination act ("OADA"), "[i]t is a discriminatory practice for an employer . . . [t]o fail or refuse to hire, to discharge, or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, privileges or responsibilities of employment, because of race, color, religion, sex, national origin, age, genetic information or disability, unless the employer can demonstrate that accommodation for the disability would impose an undue hardship on the operation of the business of such employer." *Okla. Stat.* tit. 25, § 1302(A)(1).   "Because the protections provided by the OADA are 'co-extensive with the protections provided by federal law under the ADA,' a plaintiff's OADA claim fails 'if her federal discrimination claims fail.'"   *Hamilton v. Oklahoma City Univ.*, CIV-10-1254-D, 2012 WL 5949122 (W.D. Okla. Nov. 28, 2012) (quoting *McCully v. American Airlines, Inc.,* 695 F. Supp. 2d 1225, 1246–47 (N.D. Okla. 2010); *Stanley v. White Swan, Inc.,* 2002 WL 32061753, at *11 (W.D. Okla. Sept. 26, 2002)).   For the same reasons Engles' ADA claims fail, her claims under the OADA cannot survive summary judgment.

### C.      Intentional Infliction of Emotional Distress

Engles' claim under Oklahoma law for intentional infliction of emotional distress ("IIED") is premised on the same allegations upon which she bases the disability claims.   To establish a claim for IIED, she must prove that: (1) Hilti acted intentionally or recklessly; (2) Hilti's conduct was extreme and outrageous; (3) Engles actually experienced emotional distress; and (4) her emotional distress was severe.   *Taylor v. Pepsi-Cola Co.*, 196 F.3d 1106, 1111 (10th Cir. 1999), citing *Gaylord Enter. Co. v. Thompson,* 958 P.2d 128, 149 (Okla. 1998) and Restatement (Second) of Torts § 46.   Engles must show that Hilti's conduct exceeded "all

possible bounds of decency" or was "utterly intolerable in a civilized community." *Taylor*, 196 F.3d at 1111 (citations omitted).  In the employment context, courts have consistently applied a very high threshold before recognizing a cause of action for intentional infliction of emotional distress under Oklahoma law.  *See, e.g., Eddy v. Brown,* 715 P.2d 74, 77 (Okla. 1986).  The trial court is to act as a "gatekeeper" and initially determine, as a matter of law, if the defendant's alleged conduct is sufficiently extreme and outrageous, as defined in Restatement of Torts (Second) § 46, to allow recovery. *See Trentadue ex rel. Aguilar v. United States,* 397 F.3d 840, 856, n.7 (10th Cir. 2005); *see Eddy,* 715 P.2d at 76.

There are no record facts that even approach any level of outrageousness, utter intolerability, or conduct that was beyond all bounds of decency.  It is undisputed that Engles' supervisor, Cochrane, made the decision to terminate Engles' temporary assignment before Cochrane ever learned of the possible stroke or exacerbation of double vision, and Engles admitted that no person at Hilti made any adverse comments about any illness or her absence from work.  The facts simply do not rise to the level of outrageous and intolerable conduct supporting any IIED claim.[6]

**IT IS THEREFORE ORDERED** that the defendant's Motion for Summary Judgment (Doc. 26) is **granted**.  A separate judgment will be entered forthwith.

**IT IS FURTHER ORDERED** that the parties' pending motions in limine (Doc. 27, 28) are **moot**.  The pretrial conference set for April 5, 2013 and the jury trial set for April 15, 2013 are hereby **stricken**.

---

[6]     To the extent Engles asserts that she was frightened when she was "yelled at" and "chastised" for bringing a breakable object to work, such conduct was attributed to an employee of Adecco, which has been dismissed from this suit with prejudice, and such allegation was not asserted in relation to Hilti.  Moreover, Engles has admitted that, because of the profanities hurled *by Engles,* [an Adecco employee] informed Engles that Adecco would no longer work with her."  (Doc. 26 at 8, ¶ 45, which Engles did not dispute).

**IT IS SO ORDERED** this 4th day of April, 2013.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE